Case No. 17-50386

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL MIRANDO,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of California
Case No. 2:16-CR-00215-PA
The Honorable Percy Anderson, United States District Judge

## APPELLANT'S REPLY BRIEF

James W. Spertus (CA SBN 159825)
jim@spertuslaw.com
John Hanusz (CA SBN 277367)
john@spertuslaw.com
SPERTUS, LANDES & UMHOFER, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711

Attorneys for Defendant-Appellant
Michael Mirando

September 27, 2018

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT ..........................................................................1

ARGUMENT ......................................................................................................2

I.    The District Court Erred in Its Guidelines Calculations by Failing to Correctly Determine Intended Loss ...........................................................2

II.   The District Court Erred in Applying the Wrong Standard of Proof ..............7

III.  The District Court's Determination of Loss, the Number of Victims, and Restitution Was Not Supported by Reliable Evidence ...........................10

IV.  The Sophisticated-Means Enhancement Is Inapplicable ..............................11

V.   The District Court Penalized Mr. Mirando for Exercising His Right to Trial by Jury ..................................................................................13

VI.  The District Court Erred When It Limited Cross-Examination of the Government's Chief Prosecution Witness ...........................................16

CONCLUSION ...................................................................................................18

CERTIFICATE OF COMPLIANCE .......................................................................18

CERTIFICATE OF SERVICE ..............................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

United States v. Alvarez,
714 F. App'x 671 (9th Cir. 2017) ...........................................................9

United States v. Armstead,
552 F.3d 769 (9th Cir. 1998) ................................................................8

United States v. Austin,
432 F.3d 598 (5th Cir. 2005) ................................................................3

United States v. Carty,
520 F.3d 984 (9th Cir. 2008) ................................................................2

United States v. Cruz,
977 F.2d 732 (2d Cir. 1992)................................................................15

United States v. Fallah,
2008 WL 5102281 (S.D. Tex. Dec. 1, 2008)........................................4

United States v. Fendler,
2018 WL 3619501 (N.D. Ill. July 20, 2018)........................................13

United States v. Fitch,
659 F.3d 788 (9th Cir. 2011) ................................................................7

United States v. Frost,
914 F.2d 756 (6th Cir. 1990) ..............................................................15

United States v. Garcia-Sanchez,
189 F.3d 1143 (9th Cir. 1999) ............................................................11

United States v. Heine,
2018 WL 2986212 (D. Or. June 14, 2018) .................................... 9, 10

United States v. Hernandez,
894 F.3d 1104 (9th Cir. 2018) .................................................... 14, 15

United States v. Horob,
    735 F.3d 866 (9th Cir. 2013) ..............................................................12

United States v. Hymas,
    780 F.3d 1285 (9th Cir. 2015) .........................................................7, 9

United States v. Isiwele,
    635 F.3d 196 (5th Cir. 2011) ................................................................3

United States v. Jennings,
    711 F.3d 1144 (9th Cir. 2013) ............................................................13

United States v. Kleinman,
    880 F.3d 1020 (9th Cir. 2018) ............................................................14

United States v. Medina-Cervantes,
    690 F.2d 715 (9th Cir. 1982) ..............................................................15

United States v. Miller,
    316 F.3d 495 (4th Cir. 2003) ............................................................3, 5

United States v. Musa,
    __ F. App'x __; 2018 WL 3639506 (9th Cir. Aug. 1, 2018)................9

United States v. Nachamie,
    121 F. Supp. 2d 285 (S.D.N.Y. 2000) ........................................ 3, 4, 5

United States v. Pizarro,
    2018 WL 3493073 (D. Haw. July 20, 2018) ........................................9

United States v. Popov,
    742 F.3d 911 (9th Cir. 2014) ............................................................2, 3

United States v. Rivera,
    682 F.3d 1223 (9th Cir. 2012) ............................................................16

United States v. Singh,
    390 F.3d 168 (2d Cir. 2004)..................................................................3

United States v. Smith,
    729 F. App'x 517 (9th Cir. 2018) ......................................................5, 6

United States v. Treadwell,
   593 F.3d 990 (9th Cir. 2010) ...................................................................7

United States v. Uramoto,
   638 F.3d 84 (9th Cir. 1980) ...................................................................17

United States v. Waknine,
   643 F.3d 546 (9th Cir. 2008) .................................................................11

United States v. Walter-Eze,
   869 F.3d 891 (9th Cir. 2017) ...................................................................5

United States v. Yi,
   704 F.3d 800 (9th Cir. 2013) .................................................................10

**United States Sentencing Guidelines**

U.S.S.G. § 2B1.1 .................................................................... 11, 12

## SUMMARY OF THE ARGUMENT

The district court committed multiple reversible errors in the proceedings below. The district court improperly calculated the loss amount when it failed to account for well-documented lower reimbursement rates when determining intended loss. Mr. Mirando's sworn, unrebutted testimony clearly demonstrated that he never expected to receive reimbursement for the amounts billed to insurers. Rather, he expected to receive reimbursement for a fraction of the submitted amounts. The district court should have adjusted the intended loss calculation as a result. In addition, the district court's findings regarding the loss and victim enhancements, as well as restitution, were not supported by reliable evidence. The district court also erred by not applying the clear-and-convincing evidence standard to the sentencing enhancements, the standard required where enhancements have a disproportionate impact on an individual's sentence. The district court imposed the sophisticated-means enhancement even though there was no evidence to justify that enhancement. The district court's conduct at sentencing, including the sentence itself, made clear that it was impermissibly punishing Mr. Mirando for exercising his right to trial by jury. For these reasons, this case should be remanded to the district court for resentencing.

The district court also erred at trial by limiting Mr. Mirando's right to cross-examine the government's chief witness, and by improperly instructing the jury

regarding intent. For these additional reasons, this case should be remanded to the district court for a new trial.

## ARGUMENT

### I.   The District Court Erred in Its Guidelines Calculations by Failing to Correctly Determine Intended Loss

Mr. Mirando's sentence must be set aside if it is procedurally erroneous. The failure to correctly calculate the applicable Guidelines range constitutes procedural error, rendering the sentence unreasonable as a matter of law. United States v. Carty, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). Here, the district court's failure to correctly determine intended loss requires reversal.

Insurance companies require providers to submit invoices at the provider's usual and customary rates, but pay at the lower contract rates set forth in the carrier's contract with the provider. Mr. Mirando rebutted any presumption arising under the case law that the billed amount can be used as the intended loss amount when he introduced evidence—including sworn, unrebutted testimony—that he knew reimbursement amounts would be far less than the amounts billed to insurance companies.

This Court has held that, where there is evidence that the defendant was aware that the insurer would not pay the billed amount, but would only reimburse a certain percentage of each claim, the intended loss is not the billed amount. United States v. Popov, 742 F.3d 911, 916 (9th Cir. 2014) ("the amount billed to an

2

insurer shall constitute prima facie evidence of intended loss for sentencing purposes" but "the parties may introduce additional evidence to support arguments that the amount billed overestimates or understates the defendant's intent"). <u>Popov</u> is but one in a long line of cases holding that intended loss is not the billed amount where there is evidence that the defendant was aware that the insurer would not pay the billed amount, but would only reimburse according to a fee schedule. <u>See</u>, <u>e.g.</u>, <u>United States v. Isiwele</u>, 635 F.3d 196, 203 (5th Cir. 2011) ("the amount fraudulently billed to Medicare is 'prima facie evidence of the amount of loss [the defendant] intended to cause,' but 'the amount billed does not constitute conclusive evidence of intended loss; the parties may introduce additional evidence to suggest that the amount billed either exaggerates or understates the billing party's intent.'") (quoting <u>United States v. Miller</u>, 316 F.3d 495, 504 (4th Cir. 2003)); <u>United States v. Austin</u>, 432 F.3d 598, 599 (5th Cir. 2005) ("After considering extensive evidence, the district court reduced the loss total to the actual amount paid by Medicare on [defendant's] claims . . ."); <u>United States v. Singh</u>, 390 F.3d 168, 193-94 (2d Cir. 2004) (remanding to allow defendant an opportunity to show "that the total amount he expected to receive from insurers was indeed less than the amounts he actually billed"); <u>United States v. Nachamie</u>, 121 F. Supp. 2d 285, 293 (S.D.N.Y. 2000), <u>aff'd</u>, 28 F. App'x. 13 (2d Cir. 2001) (calculating loss based on actual loss sustained by Medicare based on evidence the government

3

presented at trial); <u>United States v. Fallah</u>, No. H-07-55; 2008 WL 5102281, at *1

(S.D. Tex. Dec. 1, 2008) ("As other courts to consider the question of how to

measure the intended loss in a Medicare fraud case have recognized, the intended

loss is not the billed amount because all parties knew that Medicare would not pay

the billed amount but would only reimburse a capped portion of that amount.").

At sentencing, Mr. Mirando clearly and unambiguously testified that he only

expected to receive a fraction of the amounts billed to insurers:

- "I knew full well that the amount that's billed was not the amount to get paid. It's what I was taught and that's just par for the course in the medical industry."

- "[Insurance companies] only pay 25 to 30 percent of the billed amount."

- "What I billed I didn't intend to receive a hundred percent, about 25 to 30 percent, which is the industry standard. Most people, to make up the variance, you know, 70, 75 percent is they bill the patients. We never billed the patients and that's – whatever we got from the insurance company was payment in full."

(ER 31; 10/30/2017 RT 23; ER 32; 10/30/2017 RT 24; ER 33; 10/30/2017 RT

25.)[1]

Although the government could have questioned Mr. Mirando regarding his

sworn statements, it chose not to. Curiously, it now complains that "at the start of

---

[1] "ER" refers to Appellant's Excerpts of Record; "PSR" refers to Appellant's
Sealed Presentence Report; "CR" refers to the Clerk's Record and is followed by
the applicable docket control number; "RT" refers to the Court Reporter's
transcript, and "AB" refers to the government's Answering Brief.

the sentencing hearing," Mr. Mirando "offered no declaration or other admissible evidence to rebut evidence of intent," despite the fact that Mr. Mirando *actually testified* regarding his intent during the sentencing hearing. (AB 42; <u>see</u> <u>also</u> AB 40 ("He did not submit a declaration, despite ample opportunity to do so."))[2] Mr. Mirando's sworn testimony confirmed the widely known fact that insurers use a fee schedule to determine reimbursements. <u>See</u> <u>Nachamie</u>, 121 F. Supp. 2d at 293 n.6 ("It is common knowledge that Medicare and private insurers pay fixed rates for medical procedures.").

This case stands in sharp contrast to the cases cited by the government, where *defendants presented no evidence regarding intent to cause loss*. <u>United States v. Walter-Eze</u>, 869 F.3d 891, 912 (9th Cir. 2017) ("Walter-Eze failed to provide any evidence that she did not intend for [the insurers] to reimburse her for [the full billed amount]."); <u>Miller</u>, 316 F.3d at 504 ("Miller offered no such evidence" regarding fee schedules and expected payment); <u>see</u> <u>also</u> <u>United States v. Smith</u>, 729 F. App'x 517, 518 (9th Cir. 2018) ("Although Smith had the burden at sentencing to rebut the presumption of intended loss based on the amounts billed

---

[2] The government cannot complain that it was unaware of the fact that Mr. Mirando planned to testify at sentencing. Indeed, in a position paper filed in advance of sentencing, Mr. Mirando's counsel indicated that Mr. Mirando would testify that he "understood that the insurance companies would pay only a small amount, if any amount, as a matter of course and that the rejection of, or the reduction of payment, was unrelated to any accusation of fraud." (ER 82; CR 98 at 11.)

to Medicare, she did not present evidence to challenge this evidence."). Here, Mr. Mirando **did** provide evidence regarding expected reimbursement—*he testified under oath and was subject to cross-examination.* This evidence was entirely in line with the widely known reimbursement rates common in that industry.

Contrary to the government's assertions, the district court's hypothetical regarding whether Mr. Mirando would have kept additional reimbursement is not dispositive. (AB 38.) Mr. Mirando's response to the hypothetical is not a "critical admission." (AB 38.) In support of its contentions, the government selectively quotes Mr. Mirando's response to the district court's query as to whether he would have kept additional reimbursement. (AB 29.) Mr. Mirando's full response makes clear, however, that no additional reimbursement would have been provided, regardless of whether he would have accepted it:

| | |
|---|---|
| The Court: | If an insurance company would have paid you more, would you have kept it? If they were going to pay you more than 20 or 30 percent would you have kept that money or would you have given it back to them? |
| Mr. Mirando: | Probably kept the money. |
| The Court: | Okay. |
| Mr. Mirando: | But that never happens, very, very rarely. And that would make up for all time times the – you know, half the time they don't pay at all. |

(ER 33; 10/20/2017 RT 25.)

The district court's hypothetical is irrelevant to the fact—recognized by this Court and many other courts— that the industry practice and custom is for insurers to pay only a fraction of submitted claims. Mr. Mirando acknowledged this truism in his sworn, unrebutted testimony at sentencing. It is not the case, as the government argues, that Mr. Mirando should be held liable for the billed amounts even though he thought that some claims would be rejected. (AB 38-39.) Instead, he should be not held liable for the billed amounts because he knew, based on industry practice and custom, that only a fraction of the billings would ever be paid. His knowledge was borne out by the fact that only a small percentage of the billed amounts in this case were actually paid.

The district court's failure to properly calculate intended loss greatly prejudiced Mr. Mirando, as the loss amount increased Mr. Mirando's sentencing offense level by eighteen levels. The district court committed reversible error, and this Court should remand for resentencing.

## II.    The District Court Erred in Applying the Wrong Standard of Proof

Where a sentencing enhancement has a disproportionate effect on a sentence, due process requires the government to prove the existence of the enhancement by clear-and-convincing evidence. See United States v. Hymas, 780 F.3d 1285, 1289-90 (9th Cir. 2015); United States v. Fitch, 659 F.3d 788, 797 (9th Cir. 2011); United States v. Treadwell, 593 F.3d 990, 1000 (9th Cir. 2010). The

7

government does not dispute the law; rather, it argues that these cases are inapplicable because the district court's calculations "were based on the scope of "criminal activity for which the defendant has already been convicted." (AB 43-44, n.4 (quoting United States v. Armstead, 552 F.3d 769, 777 (9th Cir. 1998)). The government misapprehends the ruling of Armstead, which applies only to conspiracy cases:

> Enhancements based on the extent of a conspiracy are on a fundamentally different plane than enhancements based on uncharged or acquitted conduct. Due process concerns with regard to the former are satisfied by a preponderance of the evidence standard because the enhancements are based on criminal activity for which the defendant had already been convicted.

Armstead, 552 F.3d at 777 (citations and quotations omitted).

Unlike the defendant in Armstead, Mr. Mirando was not charged with or convicted of conspiracy. Rather, he was charged with fifteen counts of health care fraud. The total loss set forth in the indictment was $10,245. (ER 1548-1549; CR 1 at 7-8.) Nearly the entire the $8.4 million loss found by the district court was based on uncharged conduct. The eighteen-level enhancement based on the $8.4 million figure is on "a fundamentally different plane" than an enhancement premised on conduct that was adjudicated by a jury. Armstead is inapplicable on its face and is irrelevant to the resolution of this claim.

The government accuses Mr. Mirando of "cynically dismiss[ing]" the district court's statement that it found the existence of the enhancements by clear-

8

and-convincing evidence. (AB 43.)  But the fact remains that the district court made this statement without any analysis whatsoever, and it appeared to do so in order to shield the claim from appellate review.  The district court made clear that it mistakenly believed that a preponderance standard was the applicable one, and it proceeded accordingly.  (ER 35; 10/30/2017 RT 27.)

Contrary to the district court's holding, the law in this circuit is clear: where sentencing enhancements yield a disproportionate impact at sentencing, a district court should require the government to prove the enhancements by clear-and-convincing evidence.  Hymas, 780 F.3d at 1289-90; United States v. Musa, __ F. App'x __; 2018 WL 3639506, at *2 (9th Cir. Aug. 1, 2018) ("On remand, the district court must find the loss by clear and convincing evidence if the loss has a disproportionate effect on Musa's sentence."); United States v. Alvarez, 714 F. App'x 671 (9th Cir. 2017) ("The district court plainly erred by applying the substantial evidence standard of proof, rather than the heightened clear and convincing standard, in increasing Alvarez's offense level by nine on the basis of uncharged theft."); United States v. Pizarro, No. CR17-00648-LEK; 2018 WL 3493073, at *6 (D. Haw. July 20, 2018) (applying clear-and-convincing standard when enhancements raised total offense level from 12 to 30); United States v. Heine, No. CR15-238-SI; 2018 WL 2986212, at *6 (D. Or. June 14, 2018) ("Because a guideline enhancement based on economic loss would substantially

increase the offense level, the Court applies a 'clear and convincing' standard for this factor, and the government has the burden to show the amount of loss.").  The district court's failure to hold the government to a heightened standard of proof here, where the enhancements increased the offense level from **six** to **thirty**, violated Mr. Mirando's right to due process, and constitutes reversible error.

## III.    The District Court's Determination of Loss, the Number of Victims, and Restitution Was Not Supported by Reliable Evidence

The district court erred in imposing enhancements relating to loss and the number of victims, and restitution, given the paucity of reliable evidence underlying the findings.  The district court's findings are entirely inconsistent with the expert report submitted by Mr. Mirando at sentencing, a report which was (at most) superficially considered by the district court.[3]  Instead, the district court chose to rely on the calculations submitted by the government, calculations which were not subject to adversarial testing at trial and which were based on an incredibly small sample size.  The weaknesses in and internal inconsistencies of the figures cited by the government and probation officer (which included

---

[3]  The district court's sole statements about the unrebutted 133-page expert report were that it (1) "ignored the evidence that was adduced at trial," and (2) argued "defenses that were ultimately rejected by the jury and is inconsistent with the defense at trial."  (ER 25; 10/30/2017 RT 17.)  The district court did not provide any support for these boilerplate assertions; thus, it cannot be said that the district court "considered the expert report."  United States v. Yi, 704 F.3d 800, 807 (9th Cir. 2013).

multiple, inconsistent actual-loss claims) were crystalized in the defense expert report.

As this Court has held, "in establishing the facts, including approximations, underlying a sentence, the district court [must] utilize only evidence that possesses 'sufficient indicia of reliability to support its probable accuracy.'" United States v. Garcia-Sanchez, 189 F.3d 1143, 1149 (9th Cir. 1999) (citation and quotation omitted). Here, the government's evidence was "too summary and too conclusory to be sufficiently reliable in the face of [defense] objections," to say nothing of the actual evidence offered by the defense to rebut the government's claims. United States v. Waknine, 643 F.3d 546, 557 (9th Cir. 2008). The district court's reliance on the government's erroneous calculations regarding loss and the number of victims, and restitution, requires reversal.

## IV. The Sophisticated-Means Enhancement Is Inapplicable

The district court also failed to correctly calculate the applicable Guidelines range by erroneously applying, over defense objection, a two-level enhancement for the use of sophisticated means. Application Note 8(B) to the Sentencing Guideline § 2B1.1 defines "sophisticated means" as:

> ***especially complex or especially intricate offense conduct*** pertaining to the execution or concealment of an offense. . . . Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

11

U.S.S.G. § 2B1.1, comment. n.8(B)) (emphasis added). Thus, the adjustment for sophisticated means can only be applied where a fraud is "'especially complex or especially intricate' compared to the usual fraud offense." <u>United States v. Horob</u>, 735 F.3d 866, 872 (9th Cir. 2013). There was nothing "especially complex or especially intricate" about Holter Labs' operation. The government itself described the operation as "very simple." (ER 1111; 4/26/2017 RT 123.) For its part, the probation officer recognized the matter as a "fairly straightforward fraudulent billing case." (PSR 1585; CR 95 at 2.)

In justifying its imposition of the enhancement, the district court found Mr. Mirando formed a company to "provide [a] fictitious entity" for financial transfers related to the scheme. (ER 37; 10/30/2017 RT 29.) In doing so, the district court ignored the fact that the company was registered in Mr. Mirando's true name—and was known to Stanton Crowley, Mr. Mirando's business partner. In fact, the company made numerous funds transfers to Mr. Crowley: as the case agent testified, these funds "were predominantly for personal funds going to either Michael Mirando or Stanton Crowley." (ER 696; 4/28/2017 RT 136.) The evidence at trial demonstrated that Mr. Crowley was well aware of—and benefitted from—the company that was purportedly an instrument used to conceal assets.

Simply put, there is no evidence that the company was used as a front or as part of a "sophisticated effort to conceal income," which might justify imposition

of the enhancement.  United States v. Jennings, 711 F.3d 1144, 1147 (9th Cir. 2013).  There is simply no evidence to support the government's claim (made without a single citation) that Mr. Mirando "created the company for the purposes of concealing his fraud."  (AB 55.)  In fact, the evidence presented by the government at trial points to the opposite conclusion: this entity was not used to conceal assets.  The transfer of assets to the company "did nothing to actually hide" the assets, thus making this enhancement inapplicable.   United States v. Fendler, No. CR17-50017; 2018 WL 3619501, at *2 (N.D. Ill. July 20, 2018).  The district court erred in imposing this enhancement, and the Court should reverse.

## V.      The District Court Penalized Mr. Mirando for Exercising His Right to Trial by Jury

The district court's comments throughout sentencing made clear that it penalized Mr. Mirando for putting the government to its burden of proof at trial. The district court's clear bias was not, as the government claims, a sign of skepticism of new claims made at sentencing or a "newly-minted sentencing argument."  (AB 57.)  Rather, the district court clearly stated that it would not credit any testimony from Mr. Mirando—*even before Mr. Mirando testified*:

> [T]he parties could have introduced additional evidence to support arguments that the amount billed overstates or understates the defendant's intent.  There was no declaration submitted by the defendant stating that he never intended to receive fraudulent claims, and any such declaration, at least in my view, at this point in this case, hardly seems to be credible.

13

(ER 26; 10/30/2017 RT 18.) Throughout sentencing, the district court blasted Mr. Mirando and his sentencing counsel for, in its view, making arguments and claims that were inconsistent with arguments made at trial,[4] failing to accept responsibility, and failing to offer evidence regarding intent. (ER 23; 10/30/2017 RT 15; ER 50; 10/30/2017 RT 42; ER 25; 10/30/2017 RT 17.) The district court made plain throughout that proceeding that it viewed sentencing through a trial lens, and that it keyed all sentencing arguments to the events at trial. The district court's hostility to Mr. Mirando's sentencing arguments evidenced an impermissible trial penalty.

A court may not subject a defendant to "more severe punishment simply because he exercised his right to stand trial." United States v. Kleinman, 880 F.3d 1020, 1040 (9th Cir. 2018) (citation and quotations omitted). In a recent case reaffirming this bedrock notion, the Court discussed the larger principle at stake:

> Enhancing a sentence solely because a defendant chooses to go to trial risks chilling future criminal defendants from exercising their constitutional rights. And imposing a penalty for asserting a constitutional right heightens the risk that future defendants will plead guilty not to accept responsibility, but to escape the sentencing court's wrath.

United States v. Hernandez, 894 F.3d 1104, 1112 (9th Cir. 2018) (vacating and remanding sentence on account of prejudicial comments made by the district

---

[4] Mr. Mirando's trial counsel did not call a single witness or offer a single exhibit in Mr. Mirando's defense.

14

court). In <u>Hernandez</u>, the Court recognized the inherent tension between arguments made at trial and at sentencing, but also made clear that the respective arguments and claims are not "binary, either/or proposition[s]." <u>Id.</u> at 1111 (quotations omitted). The strength of evidence of guilt is irrelevant: "[I]t is improper for a district judge to penalize a defendant for exercising his constitutional right to plead not guilty and go to trial, no matter how overwhelming the evidence of his guilt." <u>Id.</u> at 1110 (quoting <u>United States v. Frost</u>, 914 F.2d 756, 774 (6th Cir. 1990)).

Even the risk of a trial penalty mandates reversal. <u>United States v. Cruz</u>, 977 F.2d 732, 734 (2d Cir. 1992) (the district court's remarks "created an unacceptable risk that the sentence was impermissibly enhanced above an otherwise appropriate sentencing norm to penalize the defendant for exercising his constitutional right to stand trial"); <u>United States v. Medina-Cervantes</u>, 690 F.2d 715, 716 (9th Cir. 1982) (statements which "give rise to the inference" of a trial penalty constitute reversible error).

Like the district court in <u>Hernandez</u>, the district court here treated the arguments made at trial and at sentencing as binary, either/or propositions. It refused to credit Mr. Mirando's arguments at sentencing, stating that they were inconsistent with positions taken at trial (to the extent that any positions were taken at trial). It explicitly stated that it would discount any sworn testimony provided

15

by Mr. Mirando, despite the fact that Mr. Mirando had never before testified. The district court's animus is readily apparent from a reading of the sentencing transcript, and its statements during the course of that proceeding require a reversal of Mr. Mirando's sentence.[5]

## VI. The District Court Erred When It Limited Cross-Examination of the Government's Chief Prosecution Witness

The government's case against Mr. Mirando was based in large part on evidence and testimony provided by Stanton Crowley, the co-owner of Holter Labs. Mr. Crowley was the only testifying witness who provided any first-hand insight into the operations of the business. Despite the importance and centrality of this witness, the district court forbade questioning which would have severely impeached Mr. Crowley's credibility by exposing his crimes, prior bad acts, and motive for testifying. Specifically, the district court forbade trial counsel from questioning the chief prosecution witness about his failure to file tax returns during a seven-year period in which he was paid hundreds of thousands of dollars per

---

[5] Given the district court's comments, Mr. Mirando requests that a new district judge be appointed in the event of a reversal or remand. Reassignment is warranted here, as the district court "may have substantial difficulty in putting out of [its] . . . mind previously expressed views or findings determined to be erroneous," making "reassignment . . . advisable to preserve the appearance of justice." United States v. Rivera, 682 F.3d 1223, 1237 (9th Cir. 2012).

year.[6]  The district court also disallowed questions about what, if any, assurances Mr. Crowley had received from the government regarding his criminal liability. The importance of thorough cross-examination is heightened, given Mr. Crowley's importance to the case.  United States v. Uramoto, 638 F.3d 84, 86-87 (9th Cir. 1980) ("wide latitude [should] be given to defendants in their cross-examination of key prosecution witnesses").

Such questioning should have been allowed, and the failure to allow it does not constitute harmless error.  The reality is that Stanton Crowley was the only witness who provided any evidence regarding Holter Labs' operations.  He was the only witness who provided evidence regarding Mr. Mirando's intent, which was the central issue in the case.  A thorough and probing examination would have given the jury plenty of reason to discount Mr. Crowley's credibility and acquit Mr. Mirando.  This Court should reverse Mr. Mirando's convictions as a result.

---

[6] The government apparently takes the position that the failure to file a return given such a salary does not indicate that a crime may have committed.  (AB 62.)  This assertion is at odds with the government's practice in routinely prosecuting defendants for failing to file tax returns where a sizable salary is received.

## CONCLUSION

For the foregoing reasons, Mr. Mirando respectfully requests that the Court order a new trial on all counts of conviction. At a minimum, Mr. Mirando respectfully requests that the Court remand this case for resentencing.

DATED: September 27, 2018      Respectfully submitted,

SPERTUS, LANDES & UMHOFER, LLP

s/ James W. Spertus
James W. Spertus
John Hanusz

Attorneys for Defendant-Appellant

18

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** <u>17-50386</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28.1-1.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [4167] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [_____]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant [s/ James W. Spertus]

Date [Sep 27, 2018]

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

| 9th Circuit Case Number(s) | 17-50386 |
| --- | --- |

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  Sep 27, 2018 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)  s/ James W. Spertus

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)